# IN THE UNITED STATES DISTRICT COURT FOR THE FILED
# EASTERN DISTRICT OF OKLAHOMA

SEP - 2 2010

WILLIAM B. GUTHRIE
Clerk, U.S. District Court

By_____
Deputy Clerk

FREDERICK LEE DURBIN,        )
                             )
        Petitioner,          )
                             )
v.                           )    **Case No. CIV 07-262-JHP-KEW**
                             )
GREG PROVINCE, Warden,       )
                             )
        Respondent.          )

## REPORT AND RECOMMENDATION

This matter is before the Magistrate Judge on petitioner's petition for a writ of habeas

corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner, an inmate currently incarcerated at

Dick Conner Correctional Center in Hominy, Oklahoma, attacks his conviction in Carter

County District Court Case No. CF-2003-160 for six counts of Lewd Acts with a Child

Under Sixteen, After Former Conviction of Two Felonies. He sets forth the following

grounds for relief:

  I.    Petitioner was denied fundamentally fair trial by being prejudiced with
        improper admission of child hearsay testimony in his trial.

  II.   Petitioner was denied the effective assistance of appellate counsel.

The respondent concedes that petitioner has exhausted his state court remedies for the

purpose of federal habeas corpus review and has submitted the following records to the court

for consideration in this matter:

  A.    Petitioner's direct appeal brief.

  B.    The State's brief in petitioner's direct appeal.

  C.    Summary Opinion affirming petitioner's Judgment and Sentence.

*Durbin v. State*, No. F-2004-770 (Okla. Crim. App. Mar. 31, 2006).

D.     Petitioner's brief in support of post-conviction appeal.

E.     Order Dismissing Application for Post-Conviction Relief. *State v. Durbin*, No. CF-2003-160 (Carter County Dist. Ct. Apr. 17, 2007).

F.     *Durbin v. State*, No. PC-2007-461 (Okla. Crim. App. July 27, 2007).

G.     Transcript of petitioner's jury trial.

H.     Original Record in Case No. CF-2003-160.

## Ground I:  Hearsay Testimony

Petitioner was convicted of three counts of the lewd molestation of his 12-year-old son N.D. and three counts of the lewd molestation of his 11-year-old nephew C.G., all on the same evening at petitioner's home. He alleges he was denied a fair trial when the trial court admitted the victims' hearsay statements through prosecution witnesses Calvin Steudeman and Wyndell Goodin. The two victims testified first, and then Mr. Steudeman and Mr. Goodin testified as to what the boys had told them, allegedly allowing the State to repeat and improperly bolster the allegations against petitioner. He complains that no hearing pursuant to Okla. Stat. tit. 12, § 2803.1, was requested or held prior to Steudeman's and Goodin's testimony, and the hearing held in the midst of Goodin's testimony did not satisfy the requirements of *F.D.W. v. State*, 80 P.3d 503, 504 (Okla. Crim. App. 2003). Petitioner also claims that evidence of other crimes was improperly included in the hearsay testimony.

The OCCA denied relief on this claim in petitioner's direct appeal:

Section 2803.1 provides that a statement made by a child describing sexual abuse may be admitted into evidence if:  1) "the court finds, in a hearing conducted outside the presence of the jury, that the time, content and totality of circumstances surrounding the taking of the statement provide

2

sufficient indicia of reliability so as to render it inherently trustworthy," 2) the child testifies or is available to testify at the proceedings, and 3) "the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at least ten (10) days in advance of the proceedings to provide the adverse party with an opportunity to prepare to answer the statement."

Pursuant to § 2803.1, the State filed a pre-trial *Notice of Intent to Offer Statements of Child Describing Acts of Sexual Contact*. In fact, the State filed 4 notices, the first approximately 13 months before trial and the final notice approximately 2 months before trial. (O.R. 16, 21, 32, and 178). Each of these notices included the hearsay statements made by C.G. to Wyndell Goodin. None of the notices included statements made by either victim to Calvin Steudeman.

The record also shows that after the State's final notice was filed, the defense filed an objection to the introduction of hearsay statements. In a hearing held April 22, 2004, this defense motion was denied without comment. No witnesses were called in support of the motion. At trial, held June 14-18, 2004, the victims were the State's first two witnesses. Calvin Steudeman was the third prosecution witness. The record shows no hearing was held pursuant to § 2803.1, nor was such a hearing requested, regarding any hearsay statements to which he might testify.

Wyndell Goodin was the State's fourth witness. During Goodin's testimony, defense counsel objected on the grounds of hearsay to any statements made to the witness by C.G. The record reflects the jury was excused, and an *in-camera* hearing was held to determine if the hearsay statements would be allowed into evidence. Both the prosecutor and the defense counsel questioned Goodin regarding the credibility of C.G.'s statements. The trial court overruled the defense objection without comment, and allowed the hearsay statements.

In *J.J.J. v. State*, 782 P.2d 944, 945 (Okla. Crim. App. 1989), this Court found error occurred when the trial court failed to hold an *in-camera* hearing to determine the reliability of the hearsay testimony before it was presented to the jury. Here, a hearing was held before Goodin testified to any statements made by C.G. Therefore, the requirement of § 2803.1 to hold a hearing, outside the presence of the jury, was sufficiently met. However, the trial court failed to state for the record the particular facts and circumstances supporting

3

its findings that the child hearsay statements were reliable. *See F.D.W. v. State*, 80 P.3d 503, 504 (Okla. Crim. App. 2003). However, this is not cause for reversal as the court's omission did not have a substantial influence on the outcome of the trial. *See Simpson v. State*, 876 P2d 690, 702 (Okla. Crim. App. 1994). The hearsay statements testified to by Goodin corroborated the earlier testimony of C.G. Further, C.G.'s testimony concerning the details of and the circumstances surrounding the lewd acts committed by Appellant was consistent on both direct and cross-examination. Under these circumstances, we find the determination of reliability was appropriately made despite the court's failure to explain its findings.

Appellant also finds error in Goodin's testimony that C.G. told him there had been other incidents of abuse by Appellant starting in July 2002. Appellant argues this was improper other crimes evidence. That the State would present evidence that Appellant had abused C.G. prior to April 18 was not the subject of a pretrial notice. Further, the testimony was admitted without objection from the defense. Reviewing only for plain error we find none. The evidence was properly admitted as part of the *res gestae* of the charged acts as it showed a continuing pattern of abuse on Appellant's part and gave the jury a more complete understanding of the charged crime. *See Rogers v. State*, 890 P.2d 959, 971 (Okla. Crim. App. 1995). *See also Myers v. State*. 17 P.3d 1021, 1030 (Okla. Crim. App. 2000). Being *res gestae* evidence, it was exempted from the requirement of pretrial notice. *Burks v. State*, 594 P.2d 771, 774 (Okla. Crim. App. 1979), *overruled in part on other grounds*, *Jones v. State*, 772 P.2d 922, 925 (Okla. Crim. App. 1989).

Several hearsay objections were raised by defense counsel during the testimony of Calvin Steudeman. Appellant claims the trial court erred in overruling his objections and allowing Steudeman to testify that C.G. told him he had spent the night at N.D.'s and that he did not want to talk about what they had done. Reading this portion of the trial in context, Steudeman testified he had heard that C.G. spent the night with N.D. and that it did not concern him at the time. Steudeman testified that when he saw C.G. the next day, he asked him, "just in normal conversation, what he'd been doing." Defense counsel's objection was overruled. Steudeman then testified when he asked C.G. what he had been doing at N.D.'s house, C.G. turned his head and said he didn't walk [sic] to talk about it.

Although a statement may have been made out of court, the purpose for which the statement is offered must be reviewed in order to determine whether

4

it is hearsay or not. *Chambers v. State*, 649 P.2d 795, 798 (Okla. Crim. App. 1982). If the purpose for which it is offered is not to establish any assertion made by the challenged evidence, it is not hearsay. Steudeman's testimony concerning C.G.'s unwillingness to talk about what happened at N.D.'s house was not offered to prove the truth of the matter--that he didn't want to talk about it. Rather it was offered to show C.G. was hesitant to reveal any information about what happened. Therefore, the testimony was not hearsay and the objection was properly overruled.

Appellant also complained that Steudeman improperly testified to other crimes evidence when he said N.D. had told him that on an occasion prior to April 18, Appellant had harmed him but not sexually. No defense objection was raised to this testimony. Therefore, we review only for plain error. *Cheatham v. State*, 900 P.2d 414, 427 (Okla. Crim. App. 1995).

The witness' testimony was given in response to questioning regarding whether, prior to April 18, he was concerned about Appellant harming N.D. Steudeman said he was concerned about Appellant harming all of the children. However, only N.D. had said that Appellant had harmed him. Any error in admitting this testimony was harmless, as this testimony did not have a substantial influence on the outcome of the trial. There was sufficient evidence of Appellant's criminal conduct on April 18 to sustain the convictions. Any testimony concerning events before that time did not determine the verdict.

*Durbin*, No. F-2004-470, slip op. at 4-8.

The respondent asserts petitioner's child hearsay claim is an issue of state law that is not cognizable in a federal habeas proceeding. Erroneous evidentiary rulings are not grounds for federal habeas relief unless the rulings render the state proceedings so fundamentally unfair as to violate due process. *See Williamson v. Ward*, 110 F.3d 1508, 1522-23 (10th Cir. 1997).

As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered "the trial so fundamentally unfair as to constitute a denial of federal constitutional rights,"

5

*Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989) (quotations and citations omitted).

*Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir.), *cert. denied*, 534 U.S. 1068 (2001).

"[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (citing *Estelle*, 502 U.S. at 67-68; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)). Therefore, it is not the responsibility of a habeas court to cure errors made by the state courts concerning state law. *Estelle*, 502 U.S. at 67-68. "When . . . no particular constitutional guarantees are implicated, such evidentiary objections merely raise questions of state law and, therefore, are cognizable on habeas only if the alleged error was 'so grossly prejudicial [that it] fatally infected the trial and denied the fundamental fairness that is the essence of due process.'" *Revilla v.* Gibson, 283 F.3d 1203, 1212 (10th Cir.) (quoting Fox *v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000)), *cert. denied*, 537 U.S. 1021 (2002). After a careful review of the record, the court finds the OCCA's resolution of petitioner's evidentiary objections was based on interpretation of state law, and any alleged evidentiary errors were not so "grossly prejudicial" that petitioner was denied a fair trial. This ground for habeas corpus relief fails.

## Ground II: Ineffective Assistance of Appellate Counsel

Petitioner alleges in Ground II of his petition that his appellate counsel was ineffective in failing to raise the following issues on direct appeal: (A) ineffective assistance of trial counsel; (B) ex post facto violation in petitioner's sentences; (C) discovery violations; (D) insufficient evidence to support Counts 2, 3, and 5 of the Amended Information; and (E) cumulative error. Petitioner raised a claim of ineffective assistance of appellate counsel in

6

his application for post-conviction relief, but the OCCA found the claim was meritless:

> Petitioner asserts several propositions of error relating to his trial proceedings, claiming trial counsel was ineffective concerning those propositions. He alleges that his appellate counsel was ineffective for failing to raise the claims that trial counsel was ineffective. Petitioner also claims appellate counsel was ineffective and asks for an evidentiary hearing based upon information allegedly received from one of his jurors, after his conviction but before his sentencing, that the jury didn't believe the victims' testimony but convicted Petitioner based upon his prior convictions. . . .
>
> To support a claim of ineffective appellate counsel, Petitioner must establish counsel's performance was deficient under prevailing professional norms and but for the deficient performance, the outcome of his appeal would have been different, or he must establish factual innocence. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). Petitioner's jury found him guilty beyond a reasonable doubt, and recommended the maximum possible sentences for his crimes. He has not established that the appeal from his conviction and sentence would have or should have been different. *Id.* . . . Jurors are not allowed to testify about jury deliberations or the validity of the verdict, and are not allowed to impeach the verdict. Okla. Stat. tit. 22, § 2606; *Hall v. State*, 762 P.2d 264, 266-67 (Okla. Crim. App. 1998). Therefore, the order of the District Court of Carter County denying Petitioner's application for post-conviction relief in Case No. CF-2003-160 should be, and is hereby, **AFFIRMED**.

*Durbin v. State*, No. PC-2007-461, slip op. at 1-3 (Okla. Crim. App. July 27, 2007) (emphasis in original).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth the two-part test for determining the validity of a habeas petitioner's claim of ineffective assistance of counsel. The test requires a showing that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* at 687. The *Strickland* test also applies to appellate counsel. *Evitt v. Lucey*, 469 U.S. 387, 393-400 (1985).

The Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Consequently, appellate counsel engage in a process of "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1985) (quoting *Jones*, 463 U.S. at 751-52). The weeding out of weak claims to be raised on appeal "is the hallmark of effective advocacy," *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir. 1991), *cert. denied*, 502 U.S. 835 (1991), because "every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

*United States v. Cook*, 45 F.3d 388, 394-95 (10th Cir. 1995).

When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, we first examine the merits of the omitted issue. If the omitted issue is meritless, then counsel's failure to raise it does not amount to constitutionally ineffective assistance. *See Parker v. Champion*, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing *Cook*, 45 F.3d at 392-93), *cert. denied*, 525 U.S. 1151 (1999)). If the issue has merit, we then must determine whether counsel's failure to raise the claim on direct appeal was deficient and prejudicial. *See Cook*, 45 F.3d at 394.

*Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).

## A. Ineffective Assistance of Trial Counsel

Petitioner claims appellate counsel should have raised trial counsel's alleged ineffectiveness in (1) failing to impeach the verdict, (2) refusing to allow petitioner to take the stand, (3) failing to timely object throughout the trial to the trial court's and the prosecutor's attacks on petitioner's credibility and character, (4) failing to call five key witnesses to the stand in petitioner's defense, (5) failing to request a Section 2803.1 hearing before the testimony of Wyndell Goodin and Calvin Steudeman, and (6) failing to timely object when trial counsel did not receive the summaries of the victims' testimony before trial.

### *Failure to impeach the verdict*

Petitioner claims that the day before he was sentenced, trial counsel advised him of a telephone conversation counsel's secretary had with Juror No. 5. The juror allegedly said the jury did not believe the victims' testimony, and petitioner had been convicted solely on his past, similar convictions. Petitioner asserts his trial counsel should have moved immediately to impeach the jury's verdict, and appellate counsel's omission of this claim prejudiced his appeal. The OCCA held that Okla. Stat. tit. 12, § 2606 prohibited impeachment of the verdict based on a juror's testimony or affidavit:

> Upon an inquiry into the validity of a verdict or indictment, a juror shall not testify as to any matter or statement occurring during the course of the jury's deliberations or as to the effect of anything upon the juror's mind or another juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes during deliberations.

Okla. Stat. tit. 12, § 2606(B).

In *Wood v. State*, 158 P.3d 437, 480 (Okla. Crim. App.), *cert. denied*, 552 U.S. 999 (2007), the OCCA rejected a defendant's claim that his conviction should be reversed, because a juror stated that if she had heard certain testimony that was omitted at trial, her verdict might have been different. *Id*. at 480 n.29. Under 2606(B), however, the juror was not competent to testify about such matters, so her testimony or affidavit could not be allowed. *Id*.

Here, petitioner's trial counsel could not be considered ineffective for failing to impeach the jury's verdict. Petitioner has presented no evidence that the alleged conversation actually occurred, and based on *Wood* and Section 2606(B), any evidence about the jury process would not have been admissible. Because trial counsel was not ineffective,

petitioner's appellate counsel was not ineffective in failing to raise this meritless claim.

### *Failure to allow petitioner to testify*

Petitioner claims his trial counsel's performance was deficient in not allowing him to testify about the "time line of events" that allegedly would have shown the victims' testimony was fabricated. He contends he would have testified that he caught the victims in "mischievious" activities on the day in question, viewing pornography on the internet and stealing items belonging to petitioner's wife. Petitioner argues this evidence would have shown the jury that the victims had a motive to lie. He also asserts that his belief he would testify at trial was the "main deciding factor" in deciding to waive his right to a bifurcated hearing.

"Whether a defendant will testify on his own behalf at a criminal trial is a decision properly left to the accused." *Hooks v. State*, 862 P.2d 1273, 1283 (Okla. Crim. App. 1993), *cert. denied*, 511 U.S. 1100 (1994) (citations omitted). In this case, however, there is nothing in the record apart from petitioner's unsupported allegations, that petitioner's counsel prohibited him from testifying. Trial counsel did not mention calling him as a witness during the opening statement, "thereby leaving the option open so an intelligent decision could be made following the state's case-in-chief." *Welch v. State*, 2 P.3d 356, 376 (Okla. Crim. App. 2000). During the presentation of witnesses by the defense, petitioner's counsel advised the court, "Judge, I think I have more witnesses, and then I may need to take a [sic] in-camera hearing to determine if my client chooses to testify or remain silent." (Tr. II 449). This statement confirms that trial counsel left the decision to testify up to petitioner, but even if petitioner was advised not to testify, the OCCA would have considered the advice to be a matter of trial strategy. *See Camron v. State*, 829 P.2d 47, 54-55 (Okla. Crim. App. 1992).

Furthermore, petitioner has not shown how the victim's alleged conduct on the day of the crimes was in any fashion relevant, or that presenting this testimony would have changed the outcome of the trial. Petitioner's trial counsel was not ineffective with respect to this claim, and appellate counsel likewise was not ineffective in not raising the issue on appeal.

### *Failure to object to attacks on petitioner's credibility and character*

Petitioner also complains that trial counsel was ineffective in failing to object to the trial court's and the prosecutor's alleged attacks on his character. He specifically asserts the prosecutor and trial court improperly referred to his previous convictions for similar crimes in 1991-1992, and those statements caused the jury to convict him because of the prior crimes, not based on the trial evidence. He attempts to incorporate the earlier claim regarding Juror No. 5, but as set forth above, that claim has no merit.

The court finds petitioner has failed to substantiate this claim with any citation to the record or other evidence to support his contentions. The OCCA has stated it will not search the record to support a petitioner's unsupported arguments. *See Phillips v. State*, 989 P.2d 1017, 1036 n.6 (Okla. Crim. App. 1999) (citing *Fuller v. State*, 751 P.2d 766, 768 (Okla. Crim. App. 1988)). *See also United States v. Rodriquez-Aguirre*, 108 F.3d 1228, 1238 n.8 (10th Cir. 1997) ("[I]t is the [litigant's] responsibility to tie the salient facts, supported by specific record citation, to [his] legal contentions.") (citing *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir.1995)).

The record shows that upon charging petitioner in this prosecution, the State sought to enhance his sentence, based upon his two prior felonies for lewd molestation. Normally in such circumstances, he would have received a bifurcated proceeding in which the State would have been required to prove beyond a reasonable doubt in the second stage of trial that

11

he had two prior felony convictions. *See* Okla. Stat. tit. 22, § 860.1. Petitioner, however, stipulated to the two prior convictions for lewd molestation (Tr. I 9-19, 142; Docket #14-9 at 3), so trial counsel was not ineffective for failing to object to these alleged remarks. *See Camren v. State*, 815 P.2d 1194, 1196 (Okla. Crim. App. 1991) (holding that once a defendant stipulates to a former conviction at trial, no question of fact regarding the existence of the former conviction remains for the jury to decide). Therefore, even if trial counsel's failure to object was ineffective, he cannot show he was prejudiced by the alleged failure. The court finds petitioner has failed to show his appellate counsel was ineffective regarding this issue.

### *Failure to call certain witnesses*

Petitioner claims trial counsel failed to call five witnesses who were vital to his defense: his daughters Christina and Leanna Durbin, his mother Linda Durbin, his mother's boyfriend John Flood, and his wife Tammie Durbin. He contends his trial counsel was ineffective in failing to follow through with the plan to call them. The respondent asserts the decision not to call the witnesses was the result of sound trial strategy, and petitioner was not prejudiced by the omission. Petitioner alleges the omitted witnesses would have testified as follows:

**Christina Durbin** allegedly would have testified she was present when petitioner and the victims had a conversation about C.G. spending the night, but petitioner was not the one who suggested that C.G. spend the night. This testimony allegedly would have shown that petitioner did not plan to have C.G. spend the night to sexually abuse him. Christina also would have testified that she, petitioner's daughter Leanna, and petitioner's wife Tammie did not leave the house until 8:30 p.m., the boys did not run around the house naked or in their

12

underwear, and petitioner did not pay them to do so. Christina would have further testified about N.D.'s lying and stealing behavior prior to the alleged molestations. Christina's testimony would have included statements about petitioner's good character, credibility, sobriety, drug-free lifestyle, and that fact that he never abused her, N.D., or Tammie.

**Leanna Durbin** allegedly would have testified she was present at the pond with petitioner, C.G, and N.D about a week before the molestations, and no skinny dipping occurred. Leanna also would have testified that petitioner never was alone with C.G., and at least one of the girls was with petitioner when they rode 4-wheelers. Leanna would have further testified that three days before the incidents, she told her grandmother that Tammie Durbin said she would put petitioner in prison for a few years if he didn't straighten up, because of a suspected affair. Leanna would have testified to petitioner's good character, credibility, sobriety, drug-free lifestyle, and that fact that he never abused her, N.D., or Tammie.

**Linda Durbin** would have testified about petitioner's character and credibility and his actions since his 1995 prison release. She also would have testified that petitioner did not beat his wife or children, drink, smoke, or use drugs. She would have testified that no bad things happened at the "big house."[1] In addition, she would have testified about N.D.'s history of lying and stealing, as well as numerous inconsistencies in the victims' testimony.

**Tammie Durbin** would have testified she did not leave the house until 8:30 p.m., and she returned at 1:30 a.m. She also would have testified that she called home the night in question and heard the two boys laughing in the background. It was her idea, not

---

[1] The "big house" was a house petitioner was remodeling to make a bed and breakfast.

13

petitioner's, that she go into town that evening. Tammie would have further testified as to petitioner's character and that he never beat her or the children. The events concerning the "big house" mentioned at trial never occurred, and petitioner did not party, use drugs, drink, smoke, or have satanic images as N.D. described at trial. In addition, she would have testified about N.D.'s lying and stealing shortly before his accusations against petitioner. Tammie would have testified that petitioner did not own or possess a gun, rebutting N.D.'s testimony that petitioner held a gun to his head. In addition, petitioner never was left alone with the children for the first five years after his release from prison in 1995.

**John Flood** would have testified he stayed at petitioner's house the weekend before the molestation allegations, and petitioner and Tammie quarreled about petitioner's alleged extramarital affair.

The OCCA consistently has recognized and respected trial counsel's discretion in determining which witnesses to call at trial. *Matthews v. State*, 45 P.3d 907, 919-20 (Okla. Crim. App. 2002), *cert. denied*, 537 U.S. 1074 (2002); *Jones v. State*, 128 P.3d 521, 546 (Okla. Crim. App. 2006). The court finds petitioner has failed to show he suffered any prejudice from trial counsel's decision not to call these witnesses. The eight witnesses who did testify in petitioner's defense presented much of the evidence that would have been elicited from the witnesses petitioner claims should have been called. Two of petitioner's sisters, his brother, sister-in-law, and three of his close friends testified. Most testified about the good relationship petitioner had with N.D., petitioner's good character, and that petitioner did not smoke, drink, use drugs, or watch pornographic movies. (Docket #14-8). Most also testified about N.D.'s reputation for being untruthful. *Id*. Therefore, trial counsel did present evidence of petitioner's good character and N.D.'s untruthfulness, consistent with the

14

defense's theory at trial. The court finds the omission of the additional five witnesses eliminated repetitive testimony, and their testimony would not have affected the outcome of the trial. Again, trial and appellate counsel were not ineffective with regard to this issue.

## *Failure to request a Section 2803.1 hearing prior to testimony of Wyndell Goodin and Calvin Steudeman*

Petitioner claims trial counsel was ineffective in failing to request a Section 2803.1 hearing before the testimony of Wyndell Goodin and Calvin Steudeman to determine the reliability of their testimony concerning the hearsay statements made by N.D. and C.G. As set forth above, the OCCA found no merit in this claim, so trial counsel's failure to object did not prejudice petitioner. *See Cruse v. State*, 67 P.3d 920, 923 (Okla. Crim. App. 2003) (holding that a defense attorney's failure to object does not satisfy the requirements of *Strickland*, if the objections would have properly been overruled). Petitioner was not prejudiced by the omission of this claim on direct appeal, because it had no merit.

## *Failure to object to receiving inadequate summaries of the victims' testimony prior to trial*

Petitioner asserts his trial counsel was ineffective in failing to make a timely objection to receiving inadequate summaries of the victims' testimony before trial. As will be discussed below, however, there is nothing in the record to support the claim that the summaries were not received prior to trial or that the summaries were insufficient. Therefore, there was no basis for an objection, trial counsel was not ineffective, and appellate counsel was not ineffective for failing to raise the issue on direct appeal.

## B. Ex Post Facto Violation in Petitioner's Sentences

Petitioner next asserts his appellate counsel was ineffective in failing to allege petitioner's sentences were imposed in violation of the Ex Post Facto Clause of the United

15

States and Oklahoma Constitutions. The Third Amended Information charged petitioner with six counts of Lewd Acts with a Child Under Sixteen, in violation of Okla. Stat. tit. 21, § 1123(A)(4), after two prior felony convictions. (Docket #14-9 at 1-2). The two prior felonies were separate convictions for Lewd Molestation in Carter County District Court Case Nos. CRF-1992-209 and CRF-1992-229. (Docket #14-9 at 3). At the time of the two 1992 convictions, there was no specific enhancement provision for individuals who had multiple, subsequent violations of § 1123. On May 25, 1992, however, § 1123(A) was amended to provide that "[a]ny person convicted of a third or subsequent violation of subsection A of this section shall be guilty of a felony and shall be punished by imprisonment in the State Penitentiary for a term of life or life without parole . . . ." Okla. Stat. tit. 21, § 1123(A)(5).

Petitioner stipulated at trial to the two previous convictions under § 1123(A). Therefore, he was facing either a life sentence or a life sentence without the possibility of parole. He is claiming that because his two prior convictions for Lewd Molestation were committed before the enhancement provision of the statute became effective, the trial court erroneously instructed the jury of the two possible sentences, in violation of the prohibition against ex post facto laws. He contends the jury should have been given only the option of sentencing him up to 20 years, in accordance with the provisions of Okla. Stat. tit. 21, § 1123, in effect before the law changed in 1992.

Two critical elements must be present for an ex post facto law: "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29 (1981) (footnotes omitted), *overruled on other grounds*, *Cal. Dep't of Corr. v. Morales*, 514 U.S.

499, 506 n.3 (1995). The United States Supreme Court has held that the Ex Post Facto Clause was designed "to secure substantial personal rights against arbitrary and oppressive legislative action, and not to obstruct mere alteration in conditions deemed necessary for the orderly infliction of humane punishment." *Malloy v. South Carolina*, 237 U.S. 180, 183 (1915).

The OCCA has held that a defendant is subject to the law in effect at the time his crime is committed. *Williams v. State*, 59 P.3d 518, 519 (Okla. Crim. App. 2002). At the time of petitioner's crimes at issue in this petition, the statute required a sentence of life imprisonment or life imprisonment without the possibility of parole. Therefore, his ex post facto claim would have failed on direct appeal, and his appellate counsel was not ineffective in not raising the issue.

## C. Discovery Violations

Petitioner claims he was not allowed to interview the victims before trial, and the State did not provide adequate summaries of the victims' testimony, resulting in many "surprises" at trial he was unprepared to rebut. He also complains, as set forth above, that defense counsel was ineffective in failing to object to these alleged errors.

The record shows that, despite having all the discovery material relating to the victims' statements, defense counsel asked the trial court for permission to conduct personal interviews with the victims and the other prosecution witnesses prior to trial. (Docket 14-9 at 4-7). The trial court granted the request and entered an order allowing defense counsel to interview the victims. (Docket #14-9 at 8). After numerous additional motions and petitions, the State filed a motion with affidavits from the children's parents, stating the victims' parents refused to allow their children to be interviewed by the defense, so the trial court did

17

not allow the defense to interview the boys before trial. (Docket #14-9 at 15-47). Petitioner now claims the denial of pretrial victim interviews and adequate summaries of the victims' testimony violated the mandates of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and the Oklahoma Discovery Code.

*Brady* held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment irrespective of the good faith or bad faith of the prosecution." "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). The OCCA has adopted *Brady* and its progeny as the appropriate standard of review for determining whether a prosecutor has withheld exculpatory evidence from the defense in violation of the Due Process Clause. *Gates v. State*, 754 P.2d 882, 886-87 (Okla. Crim. App. 1988).

Citing *Torres v. State*, 962 P.2d 3, 12 (Okla. Crim. App. 1998), *cert. denied*, 525 U.S. 1082 (1999), the respondent maintains there is no question that the OCCA would have denied this claim, if appellate counsel had presented it on direct appeal. *Torres* concerned a similar complaint that *Brady* was violated when the trial court did not order the State to allow him to conduct an independent investigation of the crime scene before trial. The OCCA held that the State did not withhold exculpatory evidence from Torres. *Torres*, 962 P.2d at 12. "Rather, the question is whether the State's restrictions precluded Torres from putting on his defense thus depriving him of due process and a fair trial." *Id*. While the State placed "petty, unjustified and improper" restrictions on investigating the crime scene, Torres failed to show his defense was curtailed or that he was denied due process. *Id*.

18

In petitioner's case, the court finds he failed to show any material, exculpatory evidence was suppressed by the State, or that any of the evidence presented at trial was different from the evidence he received in discovery. There is nothing in the record to suggest there was any evidence that was not disclosed to defense counsel, or that the evidence that "surprised" petitioner would have been elicited in pretrial interviews with the victims. The OCCA, therefore, would have denied relief on this claim on direct appeal, and appellate counsel was not ineffective in not raising the claim.

The OCCA also would have denied relief on petitioner's claim of discovery violations regarding the State's alleged failure to disclose adequate and proper summaries of the victims' testimony in accordance with the Oklahoma Statutes and the Oklahoma Discovery Code. Okla. Stat. tit. 21, § 2803.1 governs the admissibility of statements made by children concerning physical or sexual abuse and provides that statements made by children under the age of 13 that describe any act of sexual contact are admissible, if the trial court determines the statements contain sufficient indicia of reliability. Section 2803.1(B) further states:

> A statement may not be admitted under this section unless the proponent of the statement makes known to the adverse party an intention to offer the statement and the particulars of the statement at least ten (10) days in advance of the proceedings to provide the adverse party with an opportunity to prepare to answer the statement.

Okla. Stat. tit. 12, § 2803.1(B).

While petitioner apparently is complaining he was denied due process because several portions of the victims' testimony were not provided to him ten days before trial, in accordance with § 2803.1, the statute clearly applies only to hearsay statements made by children sought to be admitted in court. It does not apply to the actual testimony of the

19

children. Plaintiff is complaining of the victims' actual statements at trial, so the State was not required to provide the defense ten days' notice of their testimony.

Furthermore, petitioner has failed to demonstrate the State failed to disclose all necessary materials or otherwise comply with the Oklahoma Discovery Code. Under Okla. Stat. tit. 22, § 2002(A)(1)-(3), the State, at the request of the defense, is required to disclose any relevant information, including witnesses to be called at trial. The statute, however, does not require a summary "to be a verbatim script of a witness's testimony." *Frederick v. State*, 37 P.3d 908, 922-23 (Okla. Crim. App. 2001). In addition, the OCCA has held that the trial court is the appropriate forum to request relief on alleged discovery violations, because the trial courts specifically are empowered by statute to order appropriate relief. Okla. Stat. tit. 22, § 2002(E)(2). The court, therefore, finds the OCCA would have denied relief on this claim if it had been presented on direct appeal, and appellate counsel was not ineffective in failing to raise it.

## D. Insufficient Evidence to Support Counts 2, 3, and 5 of the Information

Petitioner claims the State failed to prove his guilt beyond a reasonable doubt in Counts 2, 3, and 5 of the Amended Information. Counts 2 and 3 concerned the molestation of C.G. in petitioner's bedroom and living room, and Count 5 involved the molestation of N.D. in the bedroom.

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The OCCA follows the *Jackson* standard. *Speuhler v. State*, 709 P.2d 202, 203 (Okla. Crim. App. 1985) (citing *Jackson*, 433 U.S. 307).

The Supreme Court has repeatedly emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

To determine whether there was sufficient evidence presented at trial to sustain petitioner's conviction, the court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). The jury was instructed as follows:

> No person may be convicted of lewd acts with a child under sixteen unless the State has proved beyond a reasonable count each element of the crime. These elements are:

1. the defendant was at least three years older than the victim;
2. who knowingly and intentionally;

    and

3. touched;
4. the body or private parts;
5. of any child under sixteen years of age;
6. in any lewd or lascivious manner.

    or

3. in a lewd or lascivious manner;
4. for the purpose of sexual gratification;
5. forced or required any child under sixteen years of age;
6. to touch his private parts.

The words "lewd" and "lascivious" have the same meaning and signify conduct which is lustful and which evinces an eagerness for sexual indulgence.

(Docket #14-9 at 48).

Count 2 of the Third Amended Information charged that petitioner lewdly looked upon and touched C.G.'s buttocks and penis and forced C.G. to touch petitioner's penis with C.G.'s hand while in the bedroom at petitioner's residence. Count 3 alleged that petitioner lewdly looked upon and touched C.G.'s buttocks and penis and forced C.G. to touch petitioner's penis while in the living room of petitioner's residence. Count 5 alleged that petitioner lewdly looked upon and touched N.D's buttocks and penis and forced N.D. to touch petitioner's penis while in the bedroom of petitioner's residence. (Docket #14-9 at 1-2). The Oklahoma Court of Criminal Appeals (OCCA) set forth the facts of the case as follows:

In April 2003, Appellant lived just outside of Ardmore with his wife and four children. Twelve-year-old N.D. was Appellant's only son. Various

22

other family members lived in the same area. This included the family of 11-year-old C.G, Appellant's nephew. After school on Friday, April 18, 2003, N.D. and C.G. were at N.D.'s home jumping on the trampoline when Appellant asked N.D. to ask C.G. if he would like to spend the night. C.G. said he would have to call home and get permission first. When C.G. called, his mother was reluctant to give her permission, but C.G.'s father said he could spend the night. Upon hearing this, Appellant sent his wife and his two older daughters into Ardmore to the store. Appellant's wife and daughters usually did not go into town without Appellant. However, after the women left, Appellant and the boys ate dinner and watched a movie. Appellant sat between the boys on the sofa and covered the three of them up with a blanket. Appellant put his hand down C.G's pants and started rubbing his penis. C.G. told Appellant to get his hands out of his pants. Appellant then put his hands down N.D.'s pants and did the same thing.

Shortly thereafter, Appellant told the boys he was going to take a shower. After a few minutes, Appellant called for the boys to join him. Appellant stepped out of the shower, took the boys' clothes off, stepped back in the shower, and pulled the boys in with him. Appellant proceeded to wash both the boys, including their buttocks and penises. Appellant then told the boys to wash him, including his buttocks and penis.

While Appellant and the boys were in the shower, Calvin Steudeman, N.D.'s grandfather and C.G.'s great uncle, arrived at the house with Appellant's youngest daughter, who he had been taking care of for the day. Appellant was in the process of putting on his shirt when he answered the front door. C.G. and N.D. then got out of the shower and put on the boxer shorts they were going to sleep in. After taking N.D.'s sister to her bedroom, Appellant went to N.D.'s bedroom where he told both boys to take off their boxer shorts. Appellant undressed and got into bed with the boys. Appellant proceeded to rub his hands all over the boys' bodies. At one point, N.D.'s little sister came into the room seeking help with a toy. Appellant shouted at her to get out. However, N.D. got up, covered himself with a sheet, and took his sister to the other room where he put in a movie for her to watch. N.D. returned to his room where he and C.G. both dressed and then left to watch the movie. By the time N.D.'s mother arrived home after 10:00 p.m., Appellant was asleep on the couch with his youngest daughter, and N.D. and C.G. were playing a game of Monopoly. Throughout the evening, Appellant threatened to hurt the boys with a knife if they told anyone.

The next day, Calvin Steudeman learned that C.G. had spent the night at N.D.'s home. When Steudeman saw C.G., he asked him what had happened when he spent the night. C.G. just hung his head and said he didn't want to talk about it. Steudeman called Wyndell Goodin, C.G.'s father, and suggested he ask C.G. what had happened when he spent the night at N.D.'s home. C.G. reluctantly told his father about the sexual abuse, and the authorities were contacted. Both Steudeman and Goodin knew that Appellant was a convicted child molester.

*Durbin v. State*, No. F-2004-770, slip op. at 1-3 (Okla. Crim. App. Mar. 31, 2006).

The OCCA's findings of fact are presumed correct, unless the petitioner rebuts them by clear and convincing evidence, *see* 28 U.S.C. § 2254(e)(1), which the court finds he has failed to do. After careful review of the record, the court finds the evidence was sufficient to convict petitioner of Counts 2, 3, and 5, and the OCCA also would have found a claim of insufficient evidence was meritless. Appellate counsel's performance, therefore, could not be considered ineffective in failing to bring this claim on direct appeal.

**E. Cumulative Error**

Finally, petitioner argues the accumulation of errors deprived him of a fundamentally fair trial. As discussed above, there were no constitutional errors. "'Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors.'" *Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.) (quoting *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998)). The OCCA similarly has held that "where there is no individual error there can be no reversal for cumulative error." *Alverson v. State*, 983 P.2d 498, 520 (Okla. Crim. App. 1999), *cert. denied*, 528 U.S. 1089 (2000). Because petitioner would not have received relief from the OCCA on this claim, his appellate counsel was not ineffective in not raising it.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> As to the "unreasonable application" standard, . . . only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254. . . . [A] decision is "objectively unreasonable" when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law. It is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision. . . . [T]he state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable.

*Sandoval v. Ulibarri*, 548 F.3d 902, 908 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006)), *cert. denied*, ___ U.S. ___, 130 S.Ct. 133 (2009).

After careful review of all of petitioner's claims that his appellate counsel was ineffective, the court finds all the omitted claims are meritless, and the OCCA would have denied relief if the issues had been raised on direct appeal. Therefore, petitioner's appellate counsel was not ineffective under *Strickland*, and OCCA's post-conviction determination that appellate counsel was not ineffective was not contrary to, or an unreasonable application of federal law. *See* 28 U.S.C. § 2254(d)(1). In addition, the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented at petitioner's trial. *See* 28 U.S.C. § 2254(d)(2). Petitioner is not entitled to federal habeas

corpus relief.

**ACCORDINGLY**, the Magistrate Judge recommends that this action be, in all respects, dismissed.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the parties are given fourteen (14) days from being served with a copy of this Report and Recommendation to file with the Clerk of the Court any objections with supporting briefs. Failure to file timely written objections to the Magistrate Judge's recommendations may result in waiver of appellate review of factual and legal questions. *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

**DATED** this _2nd_ day of September 2010.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE